

**SIGNED this 25th day of February, 2010.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

IN RE: )
)
CASPRI CORPORATION ) Case No. 07-30485-LMC
) )
Debtor )

**DECISION GRANTING THE DEBTOR'S MOTION PURSUANT TO BANKRUPTCY RULE 9023 TO RECONSIDER THE COURT'S ORDER DENYING JUAN URIBE'S MOTION FOR DETERMINATION THAT THE AUTOMATIC STAY APPLIES TO ACTS TO RECOVER PROPERTY OF THE ESTATE**

**A. Introduction**

Came on for hearing the foregoing matter. On August 20, 2009, the above-captioned debtor (the "Debtor") filed its Motion For Determination That Automatic Stay Applies To Acts To Recover Property Of The Estate (the "Motion") [Docket No. 31].[1] In the Motion, the debtor asked for a ruling that certain state court actions filed against Juan Uribe and his wife, Linda, were actually property of the estate and thus could not be prosecuted by third parties such as the plaintiffs in those state court actions, and that the continued pursuit of such state court causes of

---

[1] Although the Motion was couched as being filed on behalf of the Debtor, the Motion is really for the benefit of Juan Uribe, who is a party-in-interest in this case: he was the secretary of the debtor and he put the debtor into chapter 7 after its other principals allegedly absconded with assets of the debtor. *Motion*, at 2. Uribe is also a creditor of the debtor, having made loans to the debtor that were allegedly never repaid. *Id.*

1

action by those plaintiffs would be in violation of the automatic stay.[2] On September 3, 2009, the chapter 7 trustee for the estate (the "Trustee") – Randy Osherow – filed a motion to settle the estate's claims against Juan and Linda Uribe (the "Settlement Motion") [Docket No. 33], in effect selling whatever claims the estate might have against the Uribes, including causes of action of the kind considered to be property of the estate under Fifth Circuit law (such as, by way of example only, alter ego causes of action), to the Uribes for a monetary consideration. Juan and Linda were co-defendants, along with the Debtor, in four state court lawsuits in which the plaintiffs were (a) Jaguar Investments, (b) Juan Licon d/b/a National Carpet, (c) Rene and Gabriela Luna (filed in 2006), and (d) Nick Delgado (suing Javier Carrera, who filed a third-party complaint against Mr. Uribe only). The Trustee intervened in three of the state court lawsuits. *See Motion, Exs. A-C.* On September 22, 2009, Rene and Gabriel Luna (together, the "Lunas") filed a response to the Motion [Docket No. 35] and, two days later, on September 24, 2009, the Lunas also filed a response to the Settlement Motion [Docket No. 36]. On October 9, 2009, the Uribes filed a reply in support of both the debtor's Motion and the trustee's Settlement Motion [Docket No. 39].[3] No other party filed any papers with respect to either the Motion or the Settlement Motion.

On October 15, 2009, the court held a hearing (the "October Hearing") on both the Motion and the Settlement Motion. After some wrinkles were ironed out, the court approved a modified version of the Settlement Motion. As noted above, the only state court plaintiffs that filed any response to the Motion and that made any oral argument at the October Hearing were the Lunas, who were intent on continuing their lawsuit against the Uribes individually in state

---

[2] The Motion is mischaracterized as a request that the bankruptcy court essentially extend the automatic stay to the causes of action that have been filed against the Uribes in state court. What the Motion really seeks was a determination that the state court claims against the Uribes are property of the debtor's estate under 11 U.S.C. § 541. Although it is certainly within the Uribes' discretion to ask the court to extend the automatic stay in their own behalf, pursuant to § 105(a), they have not done so here.

[3] Again, the reply was couched as being filed on behalf of the Debtor but it was clearly filed on behalf of the Uribes.

court, to the extent their claims against the Uribes were determined to be not property of the estate. At the October Hearing, it came to light that, on October 9, 2009, the Lunas filed a number of pleadings (the "October 9 Pleadings") in the state court lawsuit, one of which was an amended state court complaint (the "Amended Complaint"). The October 9 Pleadings were *not* provided to the court prior to the hearing on October 15, 2009. Instead, the October 9 Pleadings were handed up as exhibits in support of the Lunas' objection at the hearing itself. Ultimately, at the October Hearing the parties agreed that they wanted the court to determine whether *any* of the Lunas' claims – including those alleged in the Amended Complaint – were property of the estate and therefore stayed.[4] After hearing the parties' arguments, the court reset the matter for ruling on November 4, 2009. On November 4, 2009, it came to light that the settlement agreement between the Trustee and the Uribes had not yet closed and, for this reason, the court reset the ruling for December 9, 2009.

On December 9, 2009, the court read into the record an oral ruling on the Motion. The transcript (the "Transcript") of the oral ruling was filed on December 22, 2009 [Docket No. 48]. Specifically, and as more fully described in the bench ruling, the court held that the claims asserted by the Lunas in the Amended Complaint were direct claims, and thus were not claims that belonged to the estate. As such, the Lunas' claims, *as alleged in the Amended Complaint*, were neither stayed by the automatic stay nor were they either settled or sold by the Trustee in the Settlement Motion. Consequently, the Lunas were permitted to proceed with their litigation in state court. The court was supplied a form of order by the prevailing party (the Lunas) which the court concluded was consistent with its bench ruling. The entered that order (the "Order") on December 21, 2009 [Docket No. 47]. On December 28, 2009, the Uribes filed a motion for

---

[4] Although, at this point, because the Trustee and the Uribes entered into an approved settlement agreement, which has closed, the estate causes of action are no longer "stayed" but are now settled by the estate and, consequently, may no longer be asserted by any party, including the Trustee. Put another way, the Trustee has sold the estate's causes of action to the Uribes and no other party other than the Uribes, including the Trustee, may assert them.

3

reconsideration of the Order (the "Motion for Reconsideration").[5] On December 31, 2009, the Lunas filed a response [Docket No. 52]. On February 10, 2010, the court heard (the "February Hearing") the Motion for Reconsideration. This Decision is the court's ruling on the motion for reconsideration.

**B. The Pleadings**

The Motion for Reconsideration was filed within 10 days of the Order and, thus, was filed pursuant to Federal Rule of Bankruptcy Procedure 9023 (and so is governed by the standards for altering or amending judgments under Rule 59 of the Federal Rules of Civil Procedure). The Motion for Reconsideration argues that the Order was too broad in that it denied the Motion in full instead of simply denying the Motion as it related to the Lunas' Amended Complaint. At the February Hearing, the parties represented to the court that there was indeed some confusion at the state court level in that it was not clear from the language of the Order as to whether any of the other claims asserted in the remaining state court cases against the Uribes could or could not go forward. The court will not reconsider the merits of its ruling as it relates specifically to the claims alleged in the Lunas' Amended Complaint, there being, in this court's view, no cognizable basis for doing so. However, the court will grant the Motion for Reconsideration with respect to claims not specifically addressed when the court ruled on December 9, 2009. The court makes this ruling less for the benefit of the parties and more for the benefit of the state court judges called upon to separate the wheat from the chaff. To that end, the court does here seek to *clarify* its original ruling.

*The Motion*

The Motion describes the state court litigation pending against the Uribes in state court. Juan and Linda Uribe are co-defendants, along with the Debtor, in four state court lawsuits in

---

[5] Again, although the motion is couched as the Debtor's motion, it is clearly for the benefit of the Uribes.

which the plaintiffs are (a) Rene and Gabriela Luna (filed in 2006), (b) Juan Licon d/b/a National Carpet, (c) Jaguar Investments, Ltd., and (d) Javier Carrera (Mr. Carrera is being sued by Nick Delgado; Carrera filed a third-party complaint against Mr. Uribe) (together, the court will refer to the four state court plaintiffs as the "State Court Plaintiffs"). The Uribes attached the various state court complaints as exhibits D through G, respectively, to the Motion (although since the Lunas handed up their Amended Complaint at the October Hearing, the original complaint as attached to the Motion was no longer a live pleading). Other than the Lunas, no other state court plaintiff filed <u>any</u> pleadings in this bankruptcy case, much less supplied this court with copies of any relevant pleadings different from those submitted by the Uribes. Therefore, the only papers that this court has to use for its analysis as to whether the respective claims against the Uribes assert estate claims are the various complaints attached to the Motion.[6]

*The Lunas' Response and the Uribes' Reply*

Although the Lunas filed a response to the Motion, and the Uribes filed a reply, the court carefully considered and ruled on these pleadings at the December 9, 2009 hearing. To the extent any party needs clarity as to whether the Lunas' claims as alleged in the Amended Complaint are property of the estate, the court directs that party's attention to the Transcript. To avoid confusion, it is best that this court not try here to either summarize those pleadings or restate its ruling as to the Lunas' claims in the Amended Complaint. Instead, any interested party (or any state court judge) is invited to review the court's analysis as set out in the Transcript, with respect to the claims urged by the Lunas in the Amended Complaint.

---

[6] The court can only rule on the causes of action alleged in the pleadings that have been presented to the court for its review. The court cannot speculate (much less rule) on what other causes of action, whether in pleadings not furnished to this court, or in future pleadings, might or might not constitute property of the bankruptcy estate. As noted later in this decision, while this court has exclusive jurisdiction over property of a bankruptcy estate, it does *not* have exclusive jurisdiction to *determine* what is or is not property of the estate. *See* 28 U.S.C. § 1334(b). It is hoped that, should future questions arise, this decision will give the state court some guidance in how to resolve those questions.

**C. Analysis**

Before proceeding to the merits, the court is first constrained to address the question whether the Uribes have standing (or had standing) to bring either the Motion or the Motion for Reconsideration. Although the pleading purports to have been filed by "the debtor," the reality is that it was (and could only have been) brought by the Uribes. The debtor, a corporate entity, is no longer free to bring an action in its own name. It is in bankruptcy. The only person authorized to seek any relief for "the debtor" at this stage is the chapter 7 trustee. The corporate debtor, unlike individual debtors, has no existence outside of bankruptcy. *See In re Herberman*, 122 B.R. 273, 279 (Bankr. W.D.Tex. 1990). Thus, when "the debtor" filed this Motion, the court treated it for what it actually was – a filing by the Uribes, who were the former principals and former owners of the debtor. But that still leaves the question of standing unresolved, because the gravamen of the Motion was the assertion that the causes of action being asserted against the Uribes were actually property of the bankruptcy estate, and their continued pursuit, it was suggested, violated the automatic stay as impermissible attempts to exercise control over property of the bankruptcy estate. *See* 11 U.S.C. § 362(a)(5). The Uribes, of course, are not the chapter 7 trustee, the party with the right to defend the estate from incursions on its property. And standing is jurisdictional. If the party bringing an action lacks standing, then the court lacks subject matter jurisdiction to hear the dispute. *See In re United Operating Co.*, 540 F.3d 351, 354-55 (5th Cir. 2008).

The Uribes as creditors of the Debtor did have standing to bring the Motion. *See St. Paul Fire & Marine Ins. Co. v. Labuzan, et. al.*, 579 F.3d 533 (5th Cir. 2009). In *Labuzan*, the Fifth Circuit ruled that the automatic stay and its benefits are not just for the benefit of the debtor and the trustee, but also for the benefit of creditors of the estate. Labuzan, in that case, was both a former owner and a creditor of the corporate entity that filed for chapter 11 bankruptcy relief.

6

Labuzan claimed that St. Paul Fire & Marine Insurance, the issuer of the bond on a project on which the corporate debtor was the contractor, had by its actions violated the automatic stay, forcing the failure of the chapter 11 debtor and its conversion to chapter 7. Labuzan sought damages both in his capacity as former owner and as a creditor of the company (he was a guarantor on the bond). The Fifth Circuit declined to afford standing to Labuzan in his capacity as equity owner, but found that, as a creditor, he was entitled to the benefits of the automatic stay – and so also entitled to pursue a cause of action against a party whose stay violation resulted in damages to him as a creditor. The Uribes here also have creditor claims back against Caspri and so, under *Labuzan,* also have standing to seek redress for stay violations.[7]

It is uncontested that any *alter ego* type claims – a claim for an alter ego remedy, a fraudulent transfer claim, a denuding claim, a corporate fund claim – are property of the bankruptcy estate. *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987). If such causes of action are asserted by any of the plaintiffs in any of the four lawsuits against the Uribes, those actions cannot be pursued. They were already settled by the trustee of the Caspri bankruptcy estate, as property of that estate.

The Fifth Circuit said in *Torch Liquidating Trust v. Stockstill, et. al.*, 561 F.3d 377, 386 (5th Cir. 2009) that creditors also may have a derivative cause of action against the principals of a corporation if the corporation was insolvent. Any such derivative claims also belong to the bankruptcy estate, and can only be asserted by a creditor as and when that creditor receives permission to assert estate claims on the estate's behalf. *See In re Louisiana World Exposition*, 858 F.2d 233 (5th Cir. 1988). In this case, it would be pointless for any of these plaintiffs to seek

---

[7] The Uribes also have standing for another reason. They have an actual pecuniary interest in the question of ownership of these lawsuits, because they settled with the trustee. If they are to be sued again on causes of action which they already settled, then they would be forced to pay twice on the same cause of action. An actual pecuniary interest in the outcome of a given dispute is ordinarily sufficient to confer standing. *See In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004) (there must be a causal nexus between act and injury such that the person was directly and adversely affected pecuniarily by the orders of the bankruptcy court).

such permission – the causes of action, if they existed, were sold by the trustee via his settlement with the Uribes.

Here is what the Fifth Circuit has to say about whether a given cause of action belongs to the bankruptcy estate or to a shareholder or creditor:

> Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. As part of this inquiry, we look at the nature of the injury for which relief is sought. If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate.

*Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. Tex. 1994). Direct claims are those that belong only to individual creditors or shareholders and "exist independently of claims owned by the corporation…" *Medlin v. Wells Fargo Bank, N.A. (In re I.G. Service, Ltd., et. al.)*, 2008 Bankr. LEXIS 818, at *12 (Bankr. W.D. Tex. Mar. 19, 2008) (Clark, B.J.); *see also Matter of Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008). These types of claims do not belong to the corporation and, by the same token, cannot be labeled 'derivative' claims because they do not hinge on a director's or officer's duty to the corporation itself. *See In re Seven Seas*, 522 F.3d at 584; *In re I.G. Service, Ltd.*, et. al., 2008 Bankr. LEXIS 818, at *11. Instead, these types of claims arise due to a direct duty that is owed to a shareholder or creditor, as the case may be, by the officer or director. *In re I.G. Service, Ltd., et. al.*, 2008 Bankr. LEXIS 818, at *11 & n. 8; *see also N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 103 (Del. Supr. 2007). Notably, "[w]hether a particular state-law claim belongs to the bankruptcy estate depends on whether

under applicable state law the debtor could have raised the claim as of the commencement of the case." *Seven Seas*, 522 F.3d at 584.

Thus, whether any of the State Court Plaintiffs' claims asserted against the Uribes can go forward depends upon whether the causes of action asserted by them are direct causes of action. The court is not delving into the merits of any of the causes of action. For our purposes, that is largely irrelevant. Our sole concern is whether the causes of action are in fact property of the estate that were already settled by the trustee in this bankruptcy case.

*Additional State Court Claims of the Lunas Filed After The Order Was Entered*

At the February Hearing it came to light that the Lunas had further amended their Amended Complaint and now allege additional claims against the Uribes, raised after the court ruled on the Motion on December 9, 2009. The court did not have these claims before it at that time, and it is inappropriate for the court to consider them now, on a motion for reconsideration. By its nature, a motion for reconsideration asks a court to reexamine its ruling with respect to what was before it at that time. These newly amended pleadings were not before the court in October when the court considered the evidence and arguments of the parties. Nor were they before the court at the time of its ruling on December 9, 2009. On a motion for reconsideration, they are not before the court either. The court leaves it to the state court to determine whether these newly asserted causes of action were or were not property of the estate, using the decisional matrix that this court laid out in its December 2009 ruling. *See* note 6 *supra; see also* discussion *supra.*

*State Court Claims of Juan Licon dba National Carpet*

The complaint by Juan Licon d/b/a National Carpet ("Licon") is pretty bare bones. The defendants in the Licon complaint are Caspri Corporation d/b/a Optimus Construction, Juan Uribe d/b/a Team Juan Uribe and Linda Uribe fka Linda Alcazar. Licon asserts two causes of

action: breach of contract and fraud. Licon asserts both his claims against "the Defendants." He does not distinguish between Caspri and the Uribes. For our purposes, that does not matter.

To the extent Licon is suing the Debtor directly, both the breach of contract claim as well as the fraud claim are obviously stayed and cannot go forward in state court. Licon can file a proof of claim in the bankruptcy case, and the claim will be handled there, to the extent there are any assets to satisfy the claim. If the breach of contract claims and/or the fraud claims are asserted against the Uribes via the device of an alter ego cause of action, that claim cannot be pursued because that claim belonged to the bankruptcy estate and the trustee already settled that claim. In *In re Educators Group Health Trust*, the Fifth Circuit held that plaintiffs' causes of action

> based on fraud, and conspiracy to commit fraud (to the extent that these claims are based on alleged false misrepresentations to the plaintiff school districts) … claims based on negligence (to the extent that these claim allege a breach of a duty of care owed to the plaintiff school districts) … the claim that the defendants negligently misrepresented the financial status of EGHT to the plaintiff school districts…

were direct claims that were held by the creditors, not the estate. *Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust),* 25 F.3d 1281, 1286 (5th Cir. 1994). Therefore, if Licon is asserting breach of contract and/or fraud directly against the Uribes, based on a direct relationship between the Uribes and Licon, then those claims never belonged to the estate and were not sold by the Trustee. *See e.g.*, *Jackson v. Cherry (In re Cherry)*, 2006 Bankr. LEXIS 2942, at *14-15 (Bankr. S.D. Tex. Oct. 25, 2006);[8] *In re Educators Group Health Trust*, 25 F.3d

---

[8] In *Cherry*, the plaintiffs were suing the owners of the debtor based upon a separate contract that existed between those parties. The defendants argued that the claim was property of the estate. 2006 Bankr. LEXIS 2942, at *12-13. The court in *In re Cherry* said it thusly:

> The Participation Agreement constituted a contract between Cherry and the other members of BLLC including BRH, BPC and Stephens Investment Company. The Plaintiffs have alleged that Cherry's transfer of interest in certain oil and gas wells to CPI for little or no consideration constitutes a breach of the Participation Agreement. This breach allegedly caused 'a diminution of the assets of BLLC and thereby to the members.' (Compl. P 69). The Plaintiffs in this action

at 1286. Nor would Licon's direct claims be stayed by the Bankruptcy Code's automatic stay, as they are neither an impermissible attempt to exercise control over property of the estate (*i.e.*, Caspri) nor an impermissible commencement or continuation of an action to recover a claim against the bankruptcy estate (*i.e.*, Caspri). They are actions against two non-debtors, the Uribes, based on direct claims against them, and may proceed in state court. Of course, if Licon is suing the Uribes on a theory that the Uribes are personally liable to Licon because the Uribes used "their power of control [over the Debtor] for their personal benefit rather than that of the corporation…," *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 355 n. 11 (5th Cir. Tex. 1999), then those actions were property of the estate, were settled by the trustee, and may not now be asserted by Licon. In other words, for Licon's claims to be direct claims they must be based upon some direct relationship between Licon and the Uribes. They cannot be claims based solely upon the Uribes' status as officers and/or directors of the Debtor.

*State Court Claims of Jaguar Investments*

Jaguar Investments' ("Jaguar") complaint is also pretty meager. The defendants in the Jaguar complaint are Caspri Corporation d/b/a Optimus Construction, and Juan Uribe. Jaguar also asserts its claims against "the Defendants." Jaguar asserts one cause of action against the Defendants: breach of contract. Additionally, Jaguar specifically states that it would "show Defendant Caspri is not a bona fide corporation but is instead merely the alter ego of Defendant Juan Uribe. Plaintiff therefore sues Defendant Juan Uribe for all of the conduct identified above." Clearly, under Fifth Circuit precedent, alter ego claims are property of the bankruptcy estate and may not be asserted by creditors. *See e.g. In re S.I. Acquisition, Inc.*, 817 F.2d 1142

---

include BRH, BPC and Stephens Investment Company. These Plaintiffs were direct beneficiaries of the Participation Agreement and have properly alleged they have suffered damages as a result of Cherry's alleged breach of contract.

*Id.* at *14-15.

11

(5th Cir. 1987); *In re Schimmelpenninck*, 183 F.3d 347 (5th Cir. Tex. 1999). It seems pretty clear that Jaguar's complaint may not go forward in state court. Indeed, Jaguar's complaint may not go forward anywhere. The Trustee owned the cause of action, and has already settled it. Jaguar's direct claim against Caspri is of course stayed, though Jaguar is free to file a proof of claim so that it can participate in any distribution the trustee might make there. If, however, Jaguar has a direct claim against Juan Uribe, one that does not require resort to doctrines such as alter ego, then Jaguar may proceed in state court, just as the Lunas are now proceeding.

*State Court Third-Party Claims of Javier Carrera d/b/a Carrera Design Consultants*

In this third-party complaint, Javier Carrera d/b/a Carrera Design Consultants ("Carrera"), sued Juan Uribe, individually, alleging two causes of action: either indemnification or contribution. Here, the only defendant is Juan Uribe, individually. The Carrera complaint states that Carrera was sued by Nick Delgado and Nick Delgado d/b/a Delgado Doniphan Partners, L.P. ("Delgado") for breach of contract, fraud in the inducement of contract, fraud, conspiracy to fraud (together with Caspri Corporation, the Debtor), and negligent misrepresentation. Carrera's complaint is not the model of clarity; the allegations presented in Carrera's complaint are as follows. Delgado sued Carrera in December 2007 as a result of the stoppage of a project, presumably a construction project. At the time it was stopped, the project was 85% complete. According to Carrera's complaint, when the project stopped, Juan Uribe "[i]ndividually, unconditionally promised Plaintiff, NICK DELGADO d/b/a DELGADO DONIPHAN PARTNERS, L.P. to complete that project and … URIBE even brought in a new team of superintendents and construction engineers, for such completion." Apparently, Uribe represented to Delgado that the project would be complete in two months. Uribe and his employees showed up a couple of times, but then stopped working on the project, which was never completed. The project was financed by First Savings Bank with an initial budgeted cost of

12

$870,500.[9] Of the original amount, at the time the project stalled there was $105,706.67 remaining.

As noted above, Carrera is suing Uribe for indemnity and/or contribution. Carrera first denies that he is liable to Delgado on any theory of liability. But, Carrera then states that, to the extent he is found liable to Delgado, then he is entitled to either indemnification or contribution from Uribe for any amounts he ends up owing Delgado.

In the Motion, Uribe asserts that the Carrera complaint is all about the $105,000 in undrawn funds remaining from the original project loan. Uribe states in the Motion that the loan had been approved for the project with Caspri as the builder. Carrera was the architect who was to monitor and approve Caspri's draws. Uribe says: "[L]eft out altogether from the third-party complaint, is the legal basis for how URIBE was somehow no longer acting as CASPRI CORPORATION, though using its funds, on its job, and, by implication, spending them for something other than the completion of the contract. One cannot "get there from here," without having to resort to either a theory of alter ego, fraudulent transfer, or denuding the corporation – theories which would enlarge the bankruptcy estate for the benefit of *all* its creditors." *Motion*, at 4. For this reason, Uribe believes that Carrera's theories of liability are property of the estate and cannot be asserted.

The analysis in this case does not differ from the analysis of the causes of action alleged in Jaguar's and Licon's complaint. It is not clear from Carrera's complaint the exact nature of the relationship being alleged between Carrera and Uribe when Uribe is said to have promised that the project would be complete in two months. Was Uribe acting on behalf of Caspri or himself individually? In other words, did Uribe, individually, enter into a separate agreement with

---

[9] Additional costs sprang up: the project was expanded to build 6,600 square feet for an adult day care center and an additional $62,000 was needed for utility connections. These costs were funded separately.

Carrera for the completion of the project? If so, then Carrera would be alleging both the creation of a new contract between Uribe and Carrera, and the subsequent breach of that contract. If that is the allegation, then that cause of action belongs to Carrera, and was not settled by Caspri's trustee. If not, and Carrera named Uribe to, for instance, pierce the corporate veil, then the claim belongs to the estate and may not be asserted by Carrera. At this juncture, it is impossible to determine whether Carrera is suing Uribe individually or in Uribe's capacity as an officer and/or director of Caspri. However, all of the causes of action asserted in Delgado's complaint against Carrera <u>can form the basis of a direct cause of action against Uribe</u>, so long as a separate agreement or duty existed between Carrera and Uribe, individually (not as a representative of Caspri). Furthermore, if the allegation is that Uribe individually committed fraud, regardless whether he was acting for his own behalf or acting as agent for Caspri, Uribe may be liable individually. *See In re Educators Group Health Trust,* 24 F.3d 1281, 1285 (5th Cir. 1994).[10]

*Future State Court Litigation*

The court granted the Motion to Reconsider solely as an accommodation to the state court judges that find themselves having to preside over the various lawsuits against the Uribes. The court has tried through this decision, to provide his colleagues on the state court bench with the analytical tools to be able to perform the relevant analysis on whether any other claims that might be filed by the State Court Plaintiffs (or, for that matter, any other state court plaintiff) were or were not property of the Debtor's estate. If a given cause action was, under Fifth Circuit law, property of the estate, then it belonged to the trustee of Caspri, and has already been settled.

---

[10] Said the court there:
> We do agree, however, with the plaintiff school district's contention that some of the causes of action allege a direct injury to themselves, which is not derivative of any harm to the debtor. For example, the plaintiff school districts allege in paragraph XI of the complaint that the defendants intentionally misrepresented to them the financial situation of EGHT, and that they materially relied on such representations to their detriment. To the extent that this cause of action and others allege a direct injury to the plaintiff school districts, they belong to the plaintiff school districts and not to the estate.

*Id.* A similar analysis would apply here.

14

It is not available to any of these plaintiffs. If it was not property of the estate, then it was not settled, and it can be asserted by plaintiffs against the Uribes. While the court appreciates that it has concurrent jurisdiction to make these determinations, it does not serve the interests of justice to have these parties ferrying back and forth between state and federal court to figure out who is allowed to do what. The state courts are equally equipped to analyze these pleadings in light of the Fifth Circuit's precedents, and hopefully this court's analysis will be of some assistance in that task. It makes eminently practical sense to leave further decisions to the state courts, so that the parties are not forced to pursue parallel appeals in state and federal court, with all the potential that has for inconsistent rulings and further confusion. This decision, then, is this court's "last word" on the subject. It is for this reason that the court declines to undertake an analysis of whether the Lunas' newly asserted claims – claims asserted <u>after</u> the court's December 9 ruling – constitute property of the estate. The court has confined its ruling here to the pleadings that were "before the court" as it were as of its ruling on December 9, 2009. Any further decisions regarding this issue are best left to the state courts.

**D. Conclusion**

The Motion to Reconsider was granted by the court solely for the purpose of clarifying the Order denying the Uribes' Motion. The court did not reconsider the December 9 ruling as it relates to the Lunas' causes of action as stated in their Amended Complaint. The court cannot, from the papers it has available to it, definitively say whether the claims asserted by Licon, Jaguar, or Carrera are or are not property of the estate. However, as Fifth Circuit precedent shows, so long as the State Court Plaintiffs are suing the Uribes for direct claims – that is, for breach of some direct duty that the Uribes had to each of these State Court Plaintiffs – the claims may go forward in state court since they never belonged to the bankruptcy estate and, therefore, could not have been settled by the Trustee.

###